UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No: 25-CR-10131-DJC |
| CHRISTOPHER FLANAGAN, | ) ) | |
| Defendant | ) ) ) | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States hereby opposes Defendant Christopher Flanagan's Motion to Dismiss

Count Six of the Indictment (ECF 53).  For the reasons explained below, Flanagan's motion is

without merit and should be denied.

### I.  Facts Alleged in the Indictment

From approximately early 2019 to mid-2024, Flanagan served as the Executive Officer of

a Home Builders Association in Cape Code ("HBA").  Indictment, ¶ 2.  Additionally, in 2022,

Flanagan was elected to his first two-year term as a Massachusetts State Representative.  *Id.*, ¶ 1.

From in or about November 2021 through January 2023, Flanagan stole approximately

$36,000 from HBA's account with First Citizens' Federal Credit Union ("FCU account").  *Id.*, ¶

7.  Most of the stolen funds were used to pay personal expenses, such as mortgage payments, credit

card debt, and other personal expenditures.  *Id.*, ¶ 9.  And in one instance, in or about January

2023, Flanagan stole $10,000 from HBA's FCU account to fund his state representative campaign

account at Cape Cod Five Cents Savings Bank (the "Campaign Account").  *Id.*  To hide the source

of the funds, Flanagan first moved the money from the HBA FCU account via cashier's check,

1

deposited that cashier's check into his personal Bank of America account, and in February 2023, withdrew $10,000 from his personal Bank of America account via cashier's check, and deposited that check into his Campaign Account. *Id.*, ¶ 10.

In or around December 2022, the Massachusetts Office of Campaign and Political Finance ("OCPF") opened an investigation regarding a mailer that was distributed during Flanagan's 2022 campaign for state representative.  *Id.*, ¶ 17.  In or around October 2023, after Flanagan admitted that he had falsely attributed the source of the mailer to fake persona and that he was in fact the source of the mailer, OCPF expanded its investigation.  *Id.*, ¶ 20.  Specifically, OCPF questioned Flanagan regarding the $10,000 Bank of America cashier's check that Flanagan had deposited into his Campaign Account in February 2023.  *Id.*

On or about October 31, 2023, Flanagan caused falsified expense reports to be submitted to OCPF.  *Id.*, ¶ 23.  Flanagan created the false expense reports in an effort to conceal his theft from HBA; specifically, to deceive OCPF into believing that the $10,000 HBA official check that had been deposited into Flanagan's Bank of America Account constituted legitimate HBA-reimbursed expenses, that HBA had a practice of allowing Flanagan to withdraw large sums of money for expense reimbursement, and that Flanagan's $10,000 deposit into his Campaign Account was a legitimate donation of Flanagan's personal funds.  *Id.*

## II.  Standard of Review

An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  A Court's role in considering a motion to dismiss is limited to ensuring that the allegations in the Indictment are sufficient to inform the defendant of the charge.  *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015)

("[T]he question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the Indictment are sufficient to apprise the defendant of the charged offense."). Accordingly, a motion to dismiss cannot be used to "test the sufficiency of the evidence." *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir 2014). Dismissing an Indictment is an extreme measure "reserved for extremely limited circumstances" and "exercised with caution." *Whitehouse v. United States Dist. Court*, 53 F.3d 1349, 1359 (1st Cir. 1995). Further, "[i]t is typically sufficient that an Indictment articulate the offense in the words of the statute itself as long as those words set forth all the elements of the offense without any uncertainty or ambiguity." *United States v. Sidoo*, 468 F. Supp. 3d 428, 436 (D. Mass. 2020) (citing *United States v. Brown*, 295 F.3d 152, 154 (1st Cir. 2002)).

### III. Argument

The defendant argues that Count Six of the Indictment should be dismissed because he submitted the falsified reports to OCPF, a state agency investigating campaign finance activities, and the Postal Inspector does not have jurisdiction to investigate state campaign finance activities. ECF 53 at 4. This argument goes to the sufficiency of the evidence and is not appropriate at the motion to dismiss stage. As explained below, the Indictment sufficiently alleges the essential facts constituting the offense, and the ultimate question of whether or not the "matter" at issue falls within the jurisdiction of a federal agency is a question for the jury.

To the extent defendant's argument is that, as a matter of law, Section 1519 does not apply because he submitted the false documents to a state agency, that argument is contrary to the vast weight of authority, and fails on its face.

3

### A. The Indictment Alleges a Violation of Section 1519

18 U.S.C. § 1519 punishes anyone who:

knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States … or in relation to or contemplation of any such matter or case[.]

Thus, to state an offense under 18 U.S.C. § 1519, the government must allege the following: (1) the defendant knowingly falsified a record or document; (2) he intended to influence the proper administration or investigation of a matter; and (3) the matter was within the jurisdiction of a federal agency or department. *See Fifth Cir. Pattern Crim. Jury Instructions* 2.65 (2019); *Eighth Cir. Pattern Crim. Jury Instructions* 6.18.1519 (2017). There is no requirement that the matter have been pending at the time of the obstructive act, or that the defendant knew the matter was within the jurisdiction of a department or agency of the United States. *See United States v. Moyer*, 674 F.3d 192, 206, 210 (3d Cir. 2012). In fact, every circuit court to consider the issue has concluded that the *mens rea* requirement does not extend to the jurisdictional element—in other words, the defendant did not need to know that there was, or would be, federal jurisdiction over the issue. *See, e.g.*, *United States v. Sheffler*, 125 F.4th 814, 826 (7th Cir. 2025) (collecting cases).

Here, the Indictment alleges each of the essential elements of the offense. First, the Indictment alleges that Flanagan falsified a record, that is, the falsified expense reports. *See* Indictment, ¶ 27. Specifically, the Indictment alleges that Flanagan submitted reports purporting to show legitimate business expenses incurred using personal funds for which he was entitled to reimbursement from the HBA. *See Id.*, ¶¶ 12-13, 27. In reality, the expenses listed on those reports were personal expenses, or campaign-related expenses, for which Flanagan was not entitled to

reimbursement. *See id.*, ¶¶ 13-16.

Second, the Indictment alleges that Flanagan falsified those records with the intent to "impede, obstruct, an influence the investigation of any matter." *See id.*, ¶ 27. Specifically, the Indictment alleges that Flanagan created and submitted the false expense reports to OCPF as part of his effort to conceal "his theft of HBA money" and to "deceive OCPF into believing: (i) that the $10,000 HBA Official Check (dated January 27, 2023) that was deposited into FLANAGAN's BOA Account constituted legitimate HBA-reimbursed expenses; (ii) that HBA had a practice of allowing FLANAGAN to withdraw large sums of money from HBA for the purpose of expense reimbursement; and (iii) that the $10,000 Campaign Check was a legitimate donation of FLANAGAN's own personal funds." *See id.*, ¶¶ 22-23.

Finally, the Indictment alleges that the matter was "within the jurisdiction of any department and agency of the United States, to wit, the United States Postal Inspection Service." *Id.*, ¶ 27. The question of whether or not the Postal Inspector has jurisdiction over the matter at issue is an element that the government must prove *at trial* to be determined *by the jury*.[1] *See Moyer*, 674 F.3d at 210 (government "required only to prove that (1) [defendant] intended to impede an investigation into 'any matter' and (2) the matter at issue *was ultimately proven to be within the federal government's jurisdiction*" (emphasis added)); *United States v. Yielding*, 657 F.3d 688, 714 (8th Cir. 2011) (it is "sufficient that the 'matter' is within the jurisdiction of a federal agency as a *factual* matter" (emphasis added)). Because the Indictment clearly articulates the

---

[1] In any event, USPIS has jurisdiction to investigate mail and wire fraud. *See* U.S. Dep't of Justice, Crim. Resource Manual § 939. Flanagan's fraud on HBA, and his attempt to conceal that fraud by creating and submitting falsified records, is a "matter … within the jurisdiction of any department or agency of the United States."

5

offense in "the words of the statute itself," and the defendant's argument is one of fact, the motion to dismiss must be denied.

### B. Section 1519 Applies to Defendant's Conduct

The defendant also suggests that because he submitted the false documents to a state agency investigating state law violations, there is no federal subject matter jurisdiction. This argument fails at the outset. The identity of the initiating agency and the scope of that agency's investigation are irrelevant. In fact, there need not ever be a federal investigation at all. *See United States v. Gray*, 642 F.3d 371, 379 (2d Cir. 2011) ("[Section] 1519 does not require the existence or likelihood of a federal investigation."). The sole question is whether the matter at issue was one ultimately falling within a federal agency's jurisdiction.

Courts have consistently held that § 1519's jurisdictional element is satisfied in cases similar to this one, where a defendant submits false records to state or local investigators, and the records are ultimately relevant to the investigation of a federal crime. *See, e.g.*, *United States v. Hassler*, 992 F.3d , 243, 244-48 (4th Cir. 2021) (§1519 applied where defendant submitted false report to state investigators and that report was later obtained by federal agents in connection with investigation); *United States v. Singh*, 979 F.3d 697, 720 (9th Cir. 2020) ("That the [falsified] reports were filed pursuant to state law has no bearing since they were sought in connection with the investigation of a federal crime."); *United States v. Scott*, 979 F.3d 986, 992 (2d Cir. 2020) (jurisdiction under § 1519 where corrections officer submitted false reports to state investigators because federal government had "the power to investigate civil rights violations within state prisons"); *United States v. McQueen*, 727 F.3d 1144, 1149 (11th Cir. 2013) (corrections officers' false incident reports fell within § 1519 despite fact that defendants did not intend to impede federal

investigation at the time the reports were made); *United States v. Gray*, 692 F.3d 514 (6th Cir. 2012) (documents submitted to county sheriff's office containing material omissions regarding inmate's death fell within scope of § 1519 when federal government investigated the matter four years later); *Moyer*, 674 F.3d at 210 (3d Cir. 2012) (§ 1519 charge proper for defendant police officers who made false reports to district attorney regarding assault where assault was alleged to be racially motivated and the "FBI has jurisdiction over … hate crimes"). *Cf. United States v. Brimager*, No. 13-cr-02381 JM, 2014 WL 1515867, at *5-6 (S.D. Cal. Apr. 17, 2014) (denying motion to dismiss §1519 charge where defendant impersonated murder victim in emails prior to any investigation because FBI had jurisdiction to investigate the killing and indictment alleged emails were sent with the intent to impede).  Thus, it is irrelevant that Flanagan submitted the falsified documents to OCPF as part of its investigation into state campaign finance violations.

The defendant is correct that *United States v. Singh* is instructive.  He is *not* correct that it supports his position.  In *Singh*, the Court held that statements made to the San Diego County campaign finance authorities violated § 1519 despite the fact that violations of state campaign disclosure laws do not fall within the jurisdiction of the United States, because the investigation involved a matter within federal jurisdiction, that is, contributions from foreign nationals in violation of the Federal Election Campaign Act.  979 F.3d at 720.  Here, just as in *Singh*, the false records were submitted to an agency investigating state campaign finance laws.  And, as in *Singh*, the investigation here also involved a matter within the jurisdiction of the United States—in this case, wire fraud.[2]

---

[2] While not necessary to a § 1519 offense, as the statute covers attempts to obstruct matters that do not result in the filing of charges, *see Gray*, 642 F.3d at 379, the defendant was in fact charged in Counts 1-5 of the Indictment with wire fraud in relation to the funds he stole from

The Indictment alleges that OCPF, the state agency charged with maintaining compliance with state campaign finance laws, was investigating the source of funds that Flanagan used to pay for campaign-related expenses for the purpose of determining if Flanagan was complying with state laws.  Flanagan submitted falsified reports to OCPF to obstruct the investigation into the matter—that is, the source of funds and, more specifically, the fact that he stole those funds from HBA.  That same matter—Flanagan's theft of the HBA funds—later became the focus of a federal fraud investigation.  While federal agencies may not exercise jurisdiction over state campaign finance laws, they plainly have jurisdiction over mail and wire fraud.  It makes no difference that the initial attempt to impede or obstruct by falsifying the documents was done in relation to a state investigation.  *See Gray*, 692 F.3d at 519 ("[Section 1519] does not require the Government to prove that he intended to obstruct a federal investigation. Rather, the plain language of the statute only requires the Government to prove that [defendant] intended to obstruct the investigation of *any* matter that happens to be within the federal government's jurisdiction." (emphasis in original)); *Moyer*, 674 F.3d at 206 (Section 1519 does not require the existence of a federal investigation before criminal liability may attach).  The matter at issue here, Flanagan's fraud on HBA, was one within the jurisdiction of a federal agency.  Thus, Flanagan's creation and submission of false records, made with the intent to impede, obstruct, or influence the investigation of that fraud, fits squarely within § 1519's reach.

## IV. Conclusion

For the reasons stated herein, the United States respectfully requests that the Court deny defendant's motion.

---

HBA; fraud he attempted to conceal by creating and submitting the false expense reports.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: April 8, 2026            By:   */s/ Lauren Maynard*
                                      Dustin Chao
                                      Lauren Maynard
                                      Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this motion was served upon the attorney of record by email and via the ECF system.

                               */s/ Lauren Maynard*
                               Lauren Maynard
                               Assistant United States Attorney

9